ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NATHANIEL ELLIBEE,                        )
                                          )
                        Plaintiff,        )
                                          )
        vs.                               )        Case No. 02-3233-JAR
                                          )
BETH POSEY, *et al.*,                     )
                                          )
                        Defendants.       )
_____)

## MEMORANDUM AND ORDER

        The Court now considers the following motions: (1) plaintiff's Motion to Alter or Amend

Judgment and/or Motion for Relief from Judgment or Order (Doc. 86); (2) defendants' Motion

for Summary Judgment (Doc. 79); and (3) plaintiff's Motion to Change Trial Venue (Doc. 91).

Plaintiff asks the Court to reconsider a prior ruling that dismissed all of his federal claims for

failure to exhaust his administrative remedies.  In their motion for summary judgment,

defendants argue that dismissal is now appropriate with regard to the remaining state law claims

because the Court lacks subject matter jurisdiction based on diversity of the parties.  The

defendants further argue that sovereign immunity and qualified immunity shield the state

agencies and officials from suit.  As described more fully herein, the Court denies plaintiff's

motion for relief from judgment and grants defendants' motion to dismiss for lack of subject

matter jurisdiction.  Plaintiff's motion to change venue is therefore denied as moot.

## I.  Background

        Plaintiff Nathaniel Ellibee, an inmate at the El Dorado Correctional Facility (EDCF),

brought this 42 U.S.C. § 1983 action pro se alleging that defendants, state officials in their

individual and official capacities, committed numerous constitutional violations.  Plaintiff also

alleged state law claims, arguing the Court had jurisdiction under 28 U.S.C. § 1332 based on

complete diversity of the parties.

When plaintiff Ellibee received his Inmate Trust Fund Account Statement in October

2001, he discovered that he had not been paid interest earnings on his account for the month of

September 2001.  Plaintiff sent an inquiry to the EDCF accounting department about the unpaid

interest.  He received a response from defendant Beth Posey, Accountant for the Kansas

Department of Corrections at EDCF, stating that plaintiff was being denied interest because he

was at a court proceeding on the day interest distributions were made and the computer

accounting software did not allow for payment of interest earned.  Defendant Posey represented

that the money should not have stayed at the EDCF while plaintiff was out to court, but instead

should have been sent with him.  Plaintiff made a second and third informal inquiry but received

no relief from either Don E. Thomas, Deputy Warden at EDCF, or Michael A. Nelson, Warden

at EDCF.  Plaintiff then filed an official Inmate Grievance Form and received a response from

Thomas and Nelson reaffirming their earlier decisions.  Plaintiff next appealed to the Kansas

Secretary of Corrections.  William L. Cummings, Deputy Secretary of Corrections, responded by

adopting EDCF's findings.  Defendants encouraged plaintiff to pursue litigation to resolve the

matter.

Plaintiff's Amended Complaint (Doc. 10) alleges federal claims against all defendants

based on the Fifth Amendment Takings clause, the Sixth Amendment's right of access to the

courts, and the Fourteenth Amendment due process clause.  He alleges that the defendants

recklessly disregarded and/or were deliberately indifferent and/or had malicious intent in

2

committing these constitutional violations.  Finally, plaintiff alleges the defendants violated the Kansas Tort Claims Act by committing negligence and fraud.

Plaintiff seeks declaratory relief, injunctive relief, and monetary damages as relief for the federal claims.  For his state law claims, plaintiff seeks exemplary and punitive damages "if actual fraud or actual malice is proven" and requests the maximum damages allowed under Kansas law of $500,000.  Although plaintiff resides at the EDCF, he has filed an affidavit attesting to his intent to return to Idaho upon release from custody.  All of the named defendants are citizens of the state of Kansas.

On September 28, 2005, the Court granted defendants' Motion to Dismiss all of the federal claims asserted by plaintiff (Doc. 75).[1]  The basis for denial was that plaintiff failed to fully exhaust his administrative remedies under 42 U.S.C. § 1997e.  Because the state defendants failed to address the state law claims asserted in the Amended Complaint, the Order did not dispose of the case in its entirety.  Defendants promptly filed a Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59, claiming that the Court should reconsider its prior order and dismiss plaintiff's state law claims because the Court lacks subject matter jurisdiction.  The Court denied this motion as it was an inappropriate mechanism for arguing subject matter jurisdiction, as it was not raised in the original Motion to Dismiss and because the defendants could not articulate a basis under Rule 59 for the Court to reconsider its prior Order.  The Court did note in that Order, however, that defendants are entitled to file a motion to dismiss for lack of subject matter jurisdiction at any time.

---

[1] After defendants' original counsel, Assistant Attorney General Brian Sheern, filed the Motion to Dismiss, but before the Court granted the motion, Assistant Attorney General Ralph DeZago entered his appearance in the case.  It appears that Mr. DeZago has exclusively signed all court documents on behalf of defendants since he entered his appearance on August 9, 2006 (Doc. 68).

On October 18, 2005, plaintiff filed an "Affidavit to Affirm Non-Receipt of Court's Order Dated September 28, 2005" (Doc. 78), and a Motion for Extension fo Time to file a motion under Fed. R. Civ. P. 59 due to the delay in his receipt of the dismissal order.  The Court denied this motion, as it lacks authority under Fed. R. Civ. P. 6(b) to allow such an extension of time.

Now, plaintiff has filed a Motion to Alter or Amend Judgment and/or Motion for Relief from Judgment or Order, asking the Court to again reconsider its September 28, 2005 Order.  Also, defendants filed a Motion for Summary Judgment, where they assert that sovereign immunity and qualified immunity bars plaintiff's state law claims.  Defendant also incorporate the diversity jurisdiction arguments asserted in the Motion to Alter or Amend (Doc. 77).  As described more fully below, plaintiff's Motion for Relief from Judgment (Doc. 86) is denied, and his state law claims are dismissed for lack of jurisdiction.  Therefore, plaintiff's venue motion is moot.

## II.  Discussion

### A.  *Motion for Relief From Judgment*

Plaintiff asks the Court to alter or amend its September 28, 2005 Memorandum and Order under Rule 59, or in the alternative, for relief from judgment under Rule 60.  Because this motion was filed outside the ten day time period from the date of filing prescribed by Rule 59, the Court will construe the motion as one for relief from judgment under Rule 60(b).[2]  Plaintiff argues for relief because (1) the Court did not properly consider the documents included in the *Martinez* report in ruling on the Motion to Dismiss; (2) the doctrine of equitable estoppel

---

[2]*See, e.g.*, *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995).

4

prohibits dismissal for failure to exhaust administrative remedies; (3) plaintiff has the right to determine a remedy for his relief; (4) Kansas may not impede plaintiff's access to federal remedies; and (5) the Court misconstrued 42 U.S.C. § 1997e(a) as requiring exhaustion beyond the prison grievance system.  Beyond these substantive arguments, plaintiff accuses counsel for defendants, Brian Sheern, of failing to provide candor to the Court by not disclosing legal authority in the controlling jurisdiction that is directly adverse to the position of his client. Plaintiff argues that there is "binding precedent" on this Court that opposing counsel intentionally withheld and that this Court either ignored or was unaware of.

This Court may only grant relief under Rule 60(b) in extraordinary circumstances, requiring the plaintiff to satisfy one of the six grounds set forth in that rule.[3]  Additionally, Rule 60(b) is "not available to allow a party merely to reargue an issue previously addressed by the court . . . . because a Rule 60(b) motion is not intended to be a substitute for a direct appeal."[4] Plaintiff argues in his motion that the Court misapprehended controlling law in denying his motion and essentially alleges misconduct by opposing counsel.

As plaintiff emphatically points out, he has already presented the arguments raised in this motion when he initially responded to defendants' Motion to Dismiss.  He maintains that "the

---

[3]*Hilliard v. Dist. Court of Comanche County*, 100 Fed. Appx. 816, 818–19 (10th Cir. 2004); *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir. 1991); *see* Fed. R. Civ. P. 60(b).  These grounds include:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered ; . . . (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied . . . or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

[4]*Hilliard*, 100 Fed. Appx. at 819 (internal quotations omitted).

court obviously ignored them."[5]   Rule 60(b) is not an available remedy for plaintiff to reargue the motion.  All of his arguments were previously addressed by the Court in its September 28, 2005 Order.  It appears that plaintiff is merely attempting to substitute an appeal of this decision with filing a Rule 60(b) motion.

The Court will briefly address plaintiff's allegation that both the Court and opposing counsel are either ignorant of, or misrepresented the controlling law on this matter.  First, as plaintiff has correctly pointed out, there is no case law that directly addresses this matter within the Tenth Circuit or the District of Kansas—our controlling jurisdiction.  Therefore, plaintiff's allegations of misconduct by Mr. Sheern are without merit.

Further, the cases cited by plaintiff from outside this jurisdiction, although normally *persuasive* authority, do not directly address this issue and are by no means binding precedent.  All but one of these cases discuss notice of claim requirements that are part of many states' tort remedy statutory schemes.[6]  Notice of claims are claims that, by state statute, are required to be provided to the effected state agency or official so that they may have a chance to respond or

---

[5](Doc. 87 at 19.)

[6]*Blas v. Endicott*, 31 F. Supp. 2d 1131, 1132 (E.D. Wis. 1999); *Barry v. Ratelle*, 985 F. Supp. 1235, 1238 (S.D. Cal. 1997); *State ex re. Ledford v. Circuit Court*, 599 N.W.2d 45 (Wis. Ct. App. 1999); *see Lacey v. C.S.P. Solano Med. Staff*, 990 F. Supp. 1199, 1207 (E.D. Cal. 1997) (explaining that California Tort Claims Act procedures are inapplicable to federal civil rights actions).  *Rumbles v. Hill* addressed the futility exception to the Prison Litigation Reform Act (PLRA) exhaustion requirement.  182 F.3d 1064 (9th Cir. 1999), *cert. denied*, 528 U.S. 1074 (2000).  The exception applies in situations where the administrative remedy at issue would not provide monetary relief in a suit requesting monetary relief.  It should also be noted that not all jurisdictions apply this exception.  *See Edney v. Karrigan*, 69 F. Supp. 2d 540, 544 (S.D.N.Y. 1999) (rejecting the futility exception).  Plaintiff does not make this argument here, and even if he had, it is inapplicable.  Here, the IMPP procedure would have allowed plaintiff monetary relief for the interest loss, had he been successful.  Plaintiff's citation to United States Supreme Court decisions discussing preemption of state remedies is equally inapplicable.  Those cases discuss the difference between federal habeas cases that require exhaustion of state remedies and federal civil rights actions which do not.  *See, e.g.*, *Heck v. Humphre*y, 512 U.S. 477, 480 (1994).  "Exhaustion of state remedies" in that context refers to "remedies available in the courts of the state."  *Id.* n.3.  These cases do not discuss administrative remedies, nor were they even decided prior to the enactment date of the PLRA in 1996.

amicably settle the dispute.  These are normally a prerequisite to suit in those states and are designed to encourage a possible settlement, not to encourage a final binding judgment.  The cases referred to by plaintiff hold that these notice of claim requirements are not "administrative remedies" for purposes of the PLRA.  In contrast, this Court found that the IMPP procedure at issue here is an administrative remedy that plaintiff failed to exhaust.  As explained fully in that Order, the Court found this comported with the plain meaning of the statute, which requires exhaustion of *any available* administrative remedies.  Furthermore, the IMPP procedure, unlike a notice of claim, is a "formal proceeding[] whereby a prisoner may seek recourse from a relatively disinterested decision-maker who possesses the authority to issue a definitive judgment, one that is binding upon the parties (subject to appellate review, of course) precisely because it emanates from a third-party with jurisdiction over them."[7]  The IMPP procedure is not a procedure required by the Kansas Tort Claims Act, but an internal prison grievance procedure established by the Secretary of Corrections that qualifies as an administrative remedy under the PLRA.[8]  This remedy was provided to plaintiff in the Inmate Rule Book, and may also be found in the Kansas Administrative Regulations, provided at each facility.[9]  Therefore, plaintiff's motion for relief from judgment is denied.

### B.  Motion for Summary Judgment, Construed as a Motion to Dismiss for Lack of

---

[7]*Blas*, 31 F. Supp. 2d at 1132.

[8]Even if the IMPP procedure is not considered an administrative remedy under the PLRA, as plaintiff urges, it is certainly an adequate post-deprivation remedy.  The United States Supreme Court has held that "neither negligent nor intentional random or unauthorized deprivations of property under color of state law are actionable where a plaintiff has an adequate state post-deprivation remedy."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).  Further, plaintiff makes no allegation that he was denied access to the courts, only that he was retaliated against for doing so.

[9]IMPP 01-103 (requiring inclusion of K.A.R. 44-16 in all Inmate Rule Books).

### *Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)*

Defendants filed a motion for summary judgment against the remaining state law claims in this case asserting the defenses of sovereign immunity and qualified immunity and incorporated their motion to alter or amend judgment where they argued that the Court lacks subject matter jurisdiction.  Sovereign immunity and qualified immunity, as presented in the summary judgment briefs, are obviously inapplicable defenses to the remaining state law claims.[10]  Defendants spend no time explaining how these doctrines might apply to the KTCA claims that remain.[11]   Therefore, the Court will only address the diversity jurisdiction issue incorporated into defendants' motion for summary judgment.  The Court will construe the motion as one to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), which may be raised at any time.  Mr. DeZago, current counsel for defendants, is strongly urged to more thoughtfully present dispositive issues through the proper procedural mechanisms in the future and include a particularized discussion of how such issues apply to the facts of each case.

### 1.  Standard for Dismissal

There are two statutory bases for federal subject matter jurisdiction.  First, under 28 U.S.C. § 1332,  federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.  Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United

---

[10]The KTCA consents to suit against state governmental entities for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of employment.  K.S.A. § 75-6103.

[11]Although there are many exceptions under the KTCA to liability, defendants make no argument that any of these apply to these defendants.  *See* K.S.A. § 75-6104.

States," or federal question jurisdiction.  In addition, if the Court has federal question or

diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law

claims.[12]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and

summarized the duties of the district court in considering whether it has jurisdiction to consider a

case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever
> it appears by suggestion of the parties or otherwise that the court
> lacks jurisdiction of the subject matter, the court shall dismiss the
> action.". . . Moreover, "[a] court lacking jurisdiction cannot render
> judgment but must dismiss the cause at any stage of the
> proceedings in which it becomes apparent that jurisdiction is
> lacking." . . .  Nor may lack of jurisdiction be waived or
> jurisdiction be conferred by "consent, inaction or stipulation.
> Since federal courts are courts of limited jurisdiction, there is a
> presumption against our jurisdiction, and the party invoking
> federal jurisdiction bears the burden of proof.[13]

Plaintiff is responsible for showing the Court by a preponderance of the evidence that

jurisdiction is proper.[14]  Mere allegations of jurisdiction are not enough.[15]

The Court is cognizant that it should construe a pro se litigant's pleadings liberally, with

a less stringent standard than pleadings drawn by attorneys.[16]  If the pro se plaintiff's complaint

reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the court]

---

[12]28 U.S.C. § 1367.

[13]*Penteco Corp. v. Union Gas Sys.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citations and quotations omitted).

[14]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[15]*Id.* at 798.

[16]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[17]  At the same time, it is not the proper function of the district court to assume the role of advocate for the pro se litigant.[18]  Nor will the court "supply additional factual allegations to round out plaintiff's complaint."[19]

### 2. Analysis

Defendants incorporate their arguments in the previously denied motion to alter or amend where they maintain that the Court lacks diversity jurisdiction over the remaining state law claims because, (1) plaintiff is a citizen of the state of Kansas, and (2) the amount in controversy does not exceed $75,000.  Plaintiff has incorporated into his summary judgment response his previously filed response in opposition to the motion to alter or amend, therefore the Court will consider those arguments in deciding the motion.

### a. Plaintiff's Citizenship

In its motion, defendants assert that plaintiff is a citizen of the state of Kansas for purposes of jurisdiction, therefore complete diversity is lacking.  Normally, a person's citizenship for diversity purposes is defined as domicile, which involves physical presence in a state with an intent to remain indefinitely.[20]  In the case of a prisoner, the Court applies a rebuttable presumption that "when a prisoner has been moved out-of-state by prison officers, the

---

[17]*Id.*

[18]*Id.*; *see Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.")

[19]*Whitney v. State of New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

[20]*E.g.*, *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

prisoner's citizenship for diversity purposes is the state where he was domiciled before he was imprisoned."[21]   Here, plaintiff was a citizen of Idaho prior to his military duty assignment in Kansas, where he resided before his incarceration in Kansas.  Plaintiff maintains that he intends to return to Idaho after his release and that his presence in Kansas for military duty did not suffice to change his domicile from Idaho to Kansas prior to his incarceration.

Defendants baldly assert that plaintiff's citizenship "has already been settled by U.S. District Court Judge G.T. VanBebber," referring to an Order filed in *Ellibee v. Simmons*, Case No. 03-3194-JWL, Doc. 4 (Mar. 9, 2004).  In that case, this plaintiff filed a case against state agencies and officials regarding his inmate trust fund accounts.  In that case, he made a claim of Idaho citizenship, which contradicted his claim in a previously filed complaint that he was a citizen of Kansas.  The Court found that plaintiff's prior claim of Kansas citizenship defeated his bare assertion of Idaho citizenship in *Simmons*, and therefore dismissed his state claims for lack of diversity jurisdiction on this basis.  On June 7, 2004, plaintiff filed an affidavit in the *Simmons* case affirming that he is only present in Kansas due to his imprisonment, and that prior to imprisonment, he only resided in Kansas to the extent he was here on military duty assignment. (*Simmons*, Doc. 16.)  He stated further that his intent was to return to Idaho upon release from custody.  However, the state law claims do not appear to have been prosecuted by plaintiff beyond that date.

Plaintiff Ellibee has an extensive litigation history in this district that requires some

---

[21]*Hassan v. Allen*, 149 F.3d 1190, 1998 WL 339996, at *6 n.6 (10th Cir. June 24, 1998) (unpublished table decision) (citing *Sullivan v. Feeman*, 944 F.2d 334, 337 (7th Cir. 1991)); *see Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) ("incarceration in a state does not make one a citizen of that state.").

discussion.  Plaintiff has instituted in total eight lawsuits in this district over the last four years.[22]

After Judge Van Bebber's decision in *Simmons*, plaintiff again asserted diversity jurisdiction in

*Hazlett*.  Because Judge Van Bebber dismissed the state law claims for failure to state a claim for

relief, the Tenth Circuit remanded the case back to the district court for a determination of

subject matter jurisdiction, since plaintiff had filed an affidavit stating that he was a citizen of the

state of Idaho.  On remand, the *Hazlett* case was reassigned to the undersigned and this Court

reevaluated plaintiff's citizenship and found that he had alleged enough jurisdictional facts

through his affidavit to demonstrate the possibility of Idaho citizenship.  Likewise, on June 17,

2004, Judge Van Bebber granted a motion to alter or amend a previous order dismissing the state

law malpractice claims by plaintiff in the *Fox* case because he had sufficiently alleged the

possibility of diversity jurisdiction.  All of plaintiff's civil cases in this district assert Idaho

citizenship.  Defendants now ask this Court to accept the proposition that plaintiff's Kansas

citizenship has been "settled" in this District.  The Court does not accept this conclusory

statement, given the contrary findings in other cases.

Defendants also attach to the motion to alter or amend a report by the Kansas Parole

Board outlining plaintiff's "Proposed Release Plan."  This document shows plaintiff's primary

residence upon release at CRB-Mirror, Inc. of Shawnee in Shawnee County, Kansas.  Defendant

asserts that this is sufficient to show plaintiff's intent to remain in Kansas after he is released

from custody.  But, plaintiff correctly points out that at the end of the document under

---

[22]*Ellibee v. Posey*, Case No. 02-3233-JAR (filed Aug. 1, 2002); *Ellibee v. Hazlett*, Case No. 03-3023-JAR
(filed Jan. 14, 2003); *Ellibee v. Simmons*, Case No. 03-3194-JWL-JPO (filed April 24, 2003; closed Aug. 4, 2005
pending appeal); *Ellibee v. Roberts*, Case No. 03-3405-SAC (habeas petition filed Oct. 16, 2003; closed Dec. 3,
2003); *Ellibee v. Fox*, Case No. 03-3463-JAR-KGS (filed Dec. 5, 2003); *Ellibee v. Marlett*, Case No. 04-3059-JPO
(filed Feb. 17, 2004; closed Jan. 10, 2006 after jury trial); *Ellibee v. Higgins*, Case No. 04-3402-CM-DJW (filed
Nov. 4, 2004); *Ellibee v. Sebelius*, Case No. 04-3403-JAR-JPO (filed Nov. 4, 2004; closed Dec. 22, 2005).

"OFFENDER RELEASE STRATEGY," it states: "Inmate Ellibee indicated he would eventually

like to return to the State of Idaho where he has family members.  He has no specific release plan

other than finding employment, which he does not believe will be difficult."  On the limited

record that has been presented to the Court, it appears that Idaho was plaintiff's last state of

citizenship before he was incarcerated in Kansas.  The Court finds that plaintiff has sufficiently

alleged complete diversity of the parties in this case.[23]

### b.  Amount in Controversy

Plaintiff also must be able to allege facts sufficient to support the second requirement of

diversity jurisdiction—that the amount in controversy exceed $75,000.  The rule governing

dismissal on this issue is "unless the law provides otherwise, the amount claimed by the plaintiff

controls if the claim is apparently made in good faith."[24]  But, to dismiss a case for lack of

jurisdiction based on the amount in controversy not being met, it must appear to a legal certainty

that the claim is actually less than $75,000.[25]  The party invoking the court's jurisdiction (*i.e.*

plaintiff) bears the burden of showing that it is not a legal certainty that the claim is for less than

the jurisdictional amount.[26]  "Generally, dismissal under the legal certainty standard will be

warranted only when a contract limits the possible recovery, when the law limits the amount

---

[23]The Tenth Circuit has advised that there are certain factors that the Court should weigh in determining domicile, including "the prisoner's declaration of intentions, 'the possibility of parole . . . , the manner in which [he] has ordered his personal and business transactions, and any other factors that are relevant to corroboration of [the prisoner's] statements.'" *Smith v. Cummings*, __F.3d__, 2006 WL 1067305, at *4 (10th Cir. Apr. 24, 2006) (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1126–27 (6th Cir. 1973)).

[24]*Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (citing *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).

[25]*Id.* (citing *St. Paul*, 303 U.S. at 288–89).

[26]*Id.*; *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289–90 (10th Cir. 2001).

recoverable, or when there is an obvious abuse of federal court jurisdiction."[27]

In the Amended Complaint, plaintiff seeks actual damages of $17.83 and exemplary and punitive damages "if actual fraud or actual malice is proven" for the maximum amount allowed under Kansas law of $500,000. He argues that this request for relief was made in good faith and that it does not appear to a legal certainty that plaintiff could not recover damages in excess in $75,000 because he could be awarded exemplary and punitive damages. Defendants maintain that it appears to a legal certainty that plaintiff is unable to recover an amount in excess of $75,000 in this case because he may not recover exemplary and punitive damages.

The Court may consider punitive damages in determining the requisite jurisdictional amount.[28] But, defendants maintain that the KTCA limits the amount of punitive and exemplary damages plaintiff may recover in K.S.A. § 75-6105(c), which states:

> (c) A governmental entity shall not be liable for punitive or exemplary damages or for interest prior to judgment. An employee acting within the scope of the employee's employment shall not be liable for punitive or exemplary damages or for interest prior to judgment, except for any act or omission of the employee because of actual fraud or actual malice.

Defendants maintain that plaintiff has only put forward conclusory allegations of actual fraud or actual malice by the state employees here.

"Although allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear

---

[27]*Woodman of World Life Ins. Soc. v. Manganaro*, 342 F.3d 1213, 1217 (10th Cir. 2003).

[28]*Id.* at 1218.

a reasonable relation to the minimum jurisdictional floor."[29]  Plaintiff, then, must allege

sufficient facts that defendants acted with actual malice or committed actual fraud.  Malice is

defined under Kansas law as "a state of mind characterized by an intent to do a harmful act

without reasonable justification or excuse."[30]  The elements of fraud are: (1) an untrue statement

of fact, (2) known to be untrue by the party making it, (3) made with the intent to deceive or with

reckless disregard for the truth, (4) upon which another party justifiably relies and (5) acts to his

detriment.[31]  According to plaintiff's Amended Complaint, defendants denied him interest

earnings on his inmate trust accounts in October 2001 because he was "out-to-court" on the day

interest was distributed.  It is undisputed that plaintiff was out to court during at least part of that

day and it is undisputed that the principal sum of money in his account remained at EDCF when

he was gone.  Defendants told plaintiff that all of his funds should have been sent out to court

with him, even if he was only gone for twenty-four hours, and that the computer software that

calculates interest is unable to post earnings if the inmate is away from the facility.  He was

encouraged to pursue litigation.  Plaintiff also alleges that he has had interest credited to his

inmate account in the past and that during future instances of court appearances, officials at

EDCF would not have his funds transported with him because he must be out of the facility for

72 hours to trigger the rule.  Therefore, the Court finds that he has alleged sufficient facts to

support his allegation that defendants acted with malice or fraud by misrepresenting prison

---

[29]*Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (quoting *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1272 (10th Cir.1998) (quoting *Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973))).

[30]*Werdann v. Mel Hambelton Ford, Inc.*, 79 P.3d 1081, 1090 (Kan. Ct. App. 2003); P.I.K. Civil § 103.05.

[31]*Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005).

policy on the matter.  Further, his allegation that officials essentially challenged him to pursue the interest amount through costly litigation could support a claim that defendants acted with actual malice.

Defendants argue further that the damages claim here is excessive given the amount of recoverable compensatory damages.  The Court agrees and find that the recoverable damages here could not bear a reasonable resemblance to the jurisdictional floor in excess of $75,000. Any punitive damage award approximating that amount would violate defendants' due process rights as grossly excessive.

The Supreme Court counsels that the Court should evaluate three guideposts in determining whether a punitive damages award is grossly excessive: (1) the degree of reprehensibility of defendant's misconduct; (2) the disparity between the harm or potential harm suffered and the punitive damages award; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases.[32]  With regard to the second guidepost, the Supreme Court stated in *State Farm Mutual Automobile Insurance Co. v. Campbell*:

> [W]e have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award.  We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.  Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. . . . [S]ingle-digit multipliers are more likely to comport with due process, while still

---

[32]*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996); *Haberman v. The Hartford Ins. Grp.*, __F.3d__, 2006 WL 906116, at *11 (10th Cir. Apr. 10, 2006).

> achieving the State's goals of deterrence and retribution, than awards with ratios in the range of 500 to 1, or, in this case, of 145 to 1.
>
> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages." . . . The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.[33]

If plaintiff claims his punitive damages in this case amount to $74,982.18,[34] the ratio of this amount to his claimed compensatory damages is approximately 4205 to 1.  If the statutory cap of $500,000 is claimed, the ratio would be approximately 28,043 to 1.  Although the Court is cognizant of the fact that there is no mathematical bright-line test, it is certain that the potential ratios of punitive to compensatory damages in this case would offend due process.  The Supreme Court used the example of a 500 to 1 ratio as an example of the outer limits of what is likely to offend due process.  The Court also advised that a ratio of 100 to 1 would not be constitutionally permissive.  The ratios presented by this case far exceed other examples faced by courts[35] and would  certainly not be recoverable by plaintiff.

---

[33]*State Farm*, 538 U.S. at 424–25 (citations omitted) (quoting *Gore*, 517 U.S. at 582).

[34]This number represents the compensatory damage amount, $17.83, subtracted from the $75,000.01 minimum jurisdictional amount.

[35]*See, e.g.*, *Haberman*, 2006 WL 906116, at *11 (upholding award with ratio of 20 to 1); *Jones v. Rent-A-Center, Inc.*, 281 F. Supp. 2d 1277, 1290 (D. Kan. 2003) (upholding award with ratio of 29 to 1); *c.f. Del Vecchio v. Conseco, Inc.*, 230 F.3d 974 (2000), 979–80 (7th Cir. 2000) (" '[A] punitive damage recovery in such a large multiple of a compensatory recovery as [125] times stretches the normal ratio, and would face certain remittitur. Considering the nature of their claim and the amount of the potential compensatory damage awards on that claim, a punitive damages recovery if rendered for the amount necessary to exceed $[75,000] would be excessive.'  Lenient though it is, the St. Paul test for satisfying the jurisdictional amount has some outer limits, and we conclude that Del Vecchio has exceeded them." (quoting *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317–18 (7th Cir. 1996) (internal citations omitted)).

Moreover, the Court finds that this is not a particularly egregious act that resulted in a small amount of damages.  As was the case in *Campbell*, the harm here was economic and not physical and the damages not difficult to quantify.  A compensatory damages award of $17.83 would be all that is necessary to make the plaintiff whole and the Court is confident that no court would find an award in excess of $75,000 reasonable and proportionate to the harm suffered by plaintiff.[36]  Therefore, the Court finds that even if plaintiff's state law claims have merit, the Court lacks subject matter jurisdiction over those claims because it is a legal certainty that plaintiff would be unable to recover the amount of punitive damages he requests in his Amended Complaint.

### IT IS THEREFORE ORDERED BY THE COURT that:

1. Defendants' Motion for Summary Judgment  (Doc. 79) is **granted**.

2. Plaintiff's Motion to Alter or Amend or for Relief from Judgment (Doc. 86) is **denied**.

3. Plaintiff's Motion to Change Trial Venue (Doc. 91) is **denied as moot**.

**IT IS SO ORDERED**.

Dated this 26th  day of April 2006.

 S/ Julie A. Robinson

Julie A. Robinson

United States District Judge

---

[36]The Court notes plaintiff's concern, expressed in many of his filings, that the Court and defendants seem to undervalue the financial impact suffered by plaintiff when he was not credited with one month's interest on his account.  The Court emphasizes at this time that its finding in no way is an attempt to devalue any amount of money that might belong to plaintiff, or earned by him.  Unfortunately for plaintiff, jurisdiction must be premised on an exponentially higher minimum amount of recovery than is recoverable here.  The Court in no way comments on the significance of this amount of money to plaintiff in making its jurisdictional findings.

19